UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, IVANKA TRUMP,

and

THE DONALD J. TRUMP REVOCABLE TRUST, THE TRUMP ORGANIZATION, INC., TRUMP ORGANZATION LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, TRUMP ACQUISITION LLC, and TRUMP ACQUISITION, CORP.,

                      Plaintiffs,

- against -

DEUTSCHE BANK AG and CAPITAL ONE FINANCIAL CORP.,

                      Defendants.

Docket No. 1:19-cv-03826-ER

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## INTRODUCTION

The House of Representatives desperately wants President Donald J. Trump's private financial records. But instead of trying to obtain them from the President, the House Permanent Select Committee on Intelligence and Financial Services Committee issued subpoenas to two banks that have done business with the President: Deutsche Bank and Capital One. According to the Banks, the Committees' sweeping subpoenas seek a mountain of documents—covering *at least* the last ten years—not only about President Trump, but also his children, their children and spouses, a number of his businesses, and even any affiliates, employees, or agents of those businesses. The Committees are demanding, among other things, records of every single checking-account withdrawal, credit-card swipe, or debit-card purchase—no matter how trivial or small—made by each and every member of the Trump family. This case, accordingly, presents an important dispute between the President, two

major banks, the House of Representatives, and a number of individuals and companies totally outside government about the legality of two outrageously broad subpoenas.

What makes judicial intervention so urgent is that the subpoenas instruct the Banks to produce Plaintiffs' confidential information by May 6, 2019. While the Committees have stayed that deadline until after this Court resolves Plaintiffs' preliminary-injunction motion, the Committees have not agreed to stay the deadline until after this Court renders final judgment. Plaintiffs thus seek a preliminary injunction to ensure they have a full and fair opportunity to contest the merits of the subpoenas' legality. More precisely, Plaintiffs ask this Court to enter a preliminary injunction prohibiting Defendants from complying with or enforcing the subpoenas until this Court can reach a final decision on the merits of Plaintiffs' important claims. Only this preliminary relief will ensure that Congress' attempts to enforce the subpoenas do not interfere with the "arduous and delicate task" that the Constitution has assigned to this Court. *Watkins v. United States*, 354 U.S. 178, 198 (1957). Plaintiffs are entitled to interim relief for two independent reasons.

**First**, Plaintiffs face "'irreparable harm'" and have a "'likelihood of success on the merits.'" *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). Plaintiffs will suffer irreparable harm because, if this Court does not intervene to preserve the status quo, there will be no way to unring the bell once the Banks give Congress the requested information. The Committees will have reviewed confidential documents that this Court may later determine were illegally subpoenaed. No damages award could ever make Plaintiffs whole. And the denial of temporary relief could prevent any meaningful judicial review of Plaintiffs' claims. This is the quintessential case of irreparable harm.

Plaintiffs are also likely to prevail on the merits of their claims. The Committees' overbroad subpoenas are not supported by a "legitimate legislative purpose." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975). The Committees have not identified any legislative purpose—let alone

a potential piece of legislation—that their requests are designed to advance. At best, the Committees seek these documents so they can conduct law-enforcement activities that the Supreme Court has held are reserved to the other branches. More likely, though, the Committees want to collect and "expose" the financial documents of the President—and his children and grandchildren—"for the sake of exposure." *Watkins*, 354 U.S. at 200. That purpose is illegitimate and provides no constitutional footing for the subpoenas. Nor do the subpoenas comply with the procedural requirements of the Right to Financial Privacy Act, 12 U.S.C. §3501 *et seq.*, which regulates the federal government's attempts to obtain private financial information. In fact, Congress will not even give Plaintiffs *copies* of the subpoenas to allow them (and this Court) to fairly assess their true scope and purpose. Because Plaintiffs have not received the necessary notice or opportunity to object, the RFPA prohibits the Banks from turning over Plaintiffs' confidential information to Congress. §3403(a)-(b).

**Second**, Plaintiffs easily prevail under the alternative test for a preliminary injunction: irreparable harm plus "'sufficiently serious questions going to the merits to make them a fair ground for litigation'" and "'a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup*, 598 F.3d at 35. In a procedurally identical case, the D.C. Circuit has held that irreparable harm is the "decisive element" favoring interim relief against a congressional subpoena to a third-party bank. *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1256-57 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds*, 421 U.S. 491. Only interim relief can ensure that the third-party bank does not disclose the plaintiff's information before this Court can consider the "serious constitutional questions" raised by the subpoenas with the necessary "consideration and deliberation." *Id.*

For the same reasons, the balance of harms and public interest tilt decidedly in Plaintiffs' favor. The Banks will suffer no harm if interim relief is granted; if anything, they will be spared the cost of complying with sweeping subpoenas and the prospect of liability to Plaintiffs under the RFPA. Indeed,

the Banks have made clear that they will respect any court order staying the time for compliance. *See, e.g.,* Dkt. 21 (consent motion for temporary injunction). The only harm that the Committees will suffer, if they ultimately prevail on the merits, is some delay before receiving the documents. Courts have consistently held that such harm is given little weight and pales in comparison to the severe harm that Plaintiffs will suffer if the status quo is not preserved. And there is no public interest in allowing Congress to subvert judicial review by enforcing a subpoena that has been challenged as illegal. To the contrary, the public interest is served by ensuring that this important dispute encompassing two coequal branches is fully and fairly resolved before the Committees get documents that they are unwilling to ask the President for directly.

Finally, granting a preliminary injunction will allow this case to be adjudicated in an orderly fashion. Without one, Plaintiffs will be forced to seek the same relief from the Second Circuit and the Supreme Court. There is no reason to burden the appellate courts with emergency requests. The preliminary injunction would be for a limited duration, would ensure that the status quo is preserved while this Court considers the merits, and would cause no appreciable harm to Defendants or the public. Plaintiffs thus respectfully request that this Court grant a preliminary injunction.

## BACKGROUND

The 2018 midterm elections flipped control of the House of Representatives and its committees. Compl. ¶34. Representative Adam Schiff is now Chairman of the House Intelligence Committee, and Representative Maxine Waters is Chairwoman of the House Financial Services Committee. *Id.* ¶3. After assuming their positions, these Chairs (along with their party leadership) announced that they would aggressively issue subpoenas to force disclosure of President Trump's private finances. *Id.* ¶¶35-38. In recent weeks, several House committees have executed that plan by issuing a flurry of subpoenas and requests for information about the President's family, personal

finances, and businesses—almost all of which is completely unrelated to his term and duties in office. *Id.* ¶¶39-42.

This lawsuit concerns two of those subpoenas. The challenged subpoenas were issued as part of a secret agreement among three House committees to coordinate their efforts to obtain as much information as possible about Plaintiffs and their private financial records. *Id.* ¶40. The subpoenas' existence is not secret; Chairman Schiff and Chairwoman Waters issued public statements confirming their existence shortly after they were issued. Chairman Schiff confirmed that Deutsche Bank had received a "friendly" subpoena. And Chairman Waters told the press that the subpoenas were sent as part of an alleged inquiry into the "potential use of the U.S. financial system for illicit purposes."[1]

In an effort to ascertain firsthand the breadth of the subpoenas—and because federal law imposes notice requirements on the government's attempts to obtain financial records—Plaintiffs' counsel contacted the Committees and requested copies of the subpoenas. Counsel for the House responded by noting that Plaintiffs "are not the recipients of any subpoenas issued by the Committees and, consistent with long-standing practice, the Committees do not provide copies of subpoenas to third parties." Strawbridge Decl., Ex. A.

Because the House refused to provide any information about the subpoenas, Plaintiffs can rely only on the Banks' descriptions of their scope (the Banks also declined to provide copies of the actual subpoenas). According to Deutsche Bank, the subpoenas "require[] production of certain records and/or information related to banking activities, including information regarding accounts, financings, and related financial information" for all of the named Plaintiffs. *Id.*, Ex. B. The demand extends to any account "in the name of any of the above-named individuals or entities … *or members of their immediate family.*" *Id.* (emphasis added). They also extend to "any account in which any of the

---

[1] *See, e.g.,* Emily Flitter & David Enrich, *Deutsche Bank Is Subpoenaed for Trump Records by House Democrats*, New York Times (Apr. 15, 2019), nyti.ms/2Xa90V6; Kelsey Snell, *Congress Subpoenas Deustche Bank as Part of Democrats' Probe of Trump Finances*, NPR (Apr. 16, 2019 9:59 A.M.), n.pr/2KJTHBj.

above-named individuals or entities are, or were … a trustee, settlor or grantor, beneficiary, or beneficial owner, or in which any of the individuals or entities have or have had in any way control over, individually or with others." *Id.*

The demand is just as sweeping for the entity Plaintiffs. According to Deutsche Bank, its subpoena seeks the same information about any of those entities' "parents, subsidiaries, affiliates, branches, divisions, partnerships, properties, groups, special purpose entities, joint ventures, predecessors, successors, or any other entity in which they have or had a controlling interest." *Id.* It even includes any records of "any current or former employee, officer, director, shareholder, partner, member, consultant, senior manager, manager, senior associate, staff employee, independent contractor, agent, attorney or other representative" of the entity Plaintiffs. *Id.*

The scope of the subpoenas is equally expansive with respect to time. Deutsche Bank confirmed that "[i]n general, the subpoenas call for the Bank to produce responsive documents from January 1, 2010 through the present." But for "documents related to account applications, opening documents, KYC, due diligence, and closing documents … the subpoena requires production without any time limitation." *Id.*, Ex. C.

It is no exaggeration, then, to say that these subpoenas seek any financial document in the recipients' possession that is connected in any way, shape, or form to any of Plaintiffs, for *at least* a ten-year period. It would be hard to imagine a more intrusive and wide-ranging request to a bank about its customers. On their face, the subpoenas demand detailed records about children's savings accounts, individuals' debit- and credit-card purchases, and sensitive personal details that accompany account-opening documents.

Plaintiffs brought this suit to challenge the Banks' planned compliance with these illegal and overbroad subpoenas. The subpoenas instruct the Banks to produce Plaintiffs' confidential information by May 6. The Committees have agreed to push that deadline back until after the Court

resolves this motion, but no longer. Plaintiffs thus need a preliminary injunction to maintain the status quo until the subpoenas' validity can be fully litigated on the merits.

## ARGUMENT

The purpose of a preliminary injunction is "to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir. 1953). Plaintiffs are entitled to this relief if they show "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup*, 598 F.3d at 35. Plaintiffs satisfy this standard, in both of its iterations.

**I.     Plaintiffs will suffer irreparable harm without a preliminary injunction.**

Plaintiffs undoubtedly face irreparable harm if the Court does not issue an order preserving the status quo. If this Court does not intervene, the Banks could give the Committees reams of Plaintiffs' financial records—private information that was shared with the Banks on the condition that they would keep it confidential. If the Banks produce the information, the status quo can never be restored. One district court aptly explained why the disclosure of confidential records is "[c]learly … irreparable in nature":

> Once confidentiality is breached, the harm is done and cannot be undone. Plaintiff cannot subsequently perform its commitment to its clients to protect the confidentiality of the documents and the information which they contain. There is no way to recapture and remove from the knowledge of others information improperly disclosed by Defendant. No court order or specific performance can be framed to accomplish that end, and no award of money damages will change the fact that information which Plaintiff was entitled to have kept from the knowledge of third parties is no longer shielded from their gaze. Confidentiality, like pregnancy, is an all or nothing proposition; either it exists or it does not exist.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 72 (D. Me. 1993). "Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The status quo could never be restored." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *see PepsiCo, Inc.*

*v. Redmond,* 1996 WL 3965, at *30 (N.D. Ill. 1996) ("[J]ust as it is impossible to unring a bell, once disclosed, … confidential information lose their secrecy forever."); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C. 1976) ("Once disclosed, such information would lose its confidentiality forever."). That is why "[t]he disclosure of private, confidential information 'is the quintessential type of irreparable harm that cannot be compensated or undone by money damages.'" *Airbnb, Inc. v. City of New York*, 2019 WL 91990, at *23 (S.D.N.Y. Jan. 3, 2019) (quoting *Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000)).

Immediate intervention is also needed to preserve Plaintiffs' opportunity to secure judicial review of their constitutional claims. "Courts routinely issue injunctions to stay the status quo when" events might otherwise "moot the losing party's right to appeal." *John Doe Co. v. CFPB*, 235 F.Supp.3d 194, 206 (D.D.C. 2017); *see Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003) (explaining that the movant makes "a strong showing of irreparable harm" where disclosure would moot any appeal); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309, (1989) (Marshall, J., in chambers) ("The fact that disclosure would moot that part of the Court of Appeals' decision requiring disclosure … create[s] an irreparable injury."). This "irreparable" harm exists when a plaintiff challenges a congressional subpoena to a third party. *Eastland*, 488 F.2d at 1256. "[C]ompliance by the third person could frustrate any judicial inquiry" into "whether a legitimate legislative purpose is present." *Eastland*, 421 U.S. at 501 n.14. Allowing this to happen would wrongly deny the plaintiff's rights and "immunize the subpoena from challenge" based on "the fortuity that documents sought by a congressional subpoena are not in the hands of a party claiming injury from the subpoena." *United States v. AT&T Co.*, 567 F.2d 121, 129 (D.C. Cir. 1977). In other words, denying interim relief could "entirely destroy [Plaintiffs'] rights to secure meaningful review." *Providence Journal Co.*, 595 F.2d at 890. That is classic irreparable harm.

**II.       Plaintiffs are likely to succeed on the merits.**

      **A.       The subpoenas lack a legitimate legislative purpose.**

Not infrequently, federal courts adjudicate the legality of congressional subpoenas. Most of these cases follow a familiar fact pattern: Congress issues a subpoena, the target does not comply, Congress tries to force compliance in federal court, and the target raises the illegality of the subpoena as a defense in litigation.

But this is not the only way to challenge a congressional subpoena. When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland*, 421 U.S. at 501 n.14. When Congress "seeks that same information from a third person," however, this option is not available; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance" with the subpoena "could frustrate any judicial inquiry." *Id.* For that reason, the law allows the person whose information will be exposed to sue in federal court for an "injunction or declaratory judgment." *Eastland*, 488 F.2d at 1259. The key question in such a case is "whether a legitimate legislative purpose is present." *Eastland*, 421 U.S. at 501.

The "legitimate legislative purpose" requirement stems directly from the Constitution. "The powers of Congress … are dependent solely on the Constitution," and "no express power in that instrument" allows Congress to investigate individuals or to issue compulsory process. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880). The Constitution instead permits Congress to enact certain kinds of *legislation. See, e.g.*, Art. I, §8. Thus, Congress' power to investigate "is justified solely as an adjunct to the legislative process." *Watkins*, 354 U.S. at 197. "Congress is not invested with a general power to inquire into private affairs. The subject of any inquiry always must be one on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15 (cleaned up); *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) ("[T]he power to investigate" does not "extend to an area in which Congress is forbidden to legislate.").

"Oversight" and "transparency," in a vacuum, are not legitimate legislative purposes that can justify subpoenaing a private citizen. For more than a century, in fact, the Supreme Court has been quite "sure" that neither the House nor Senate "possesses the general power of making inquiry into the private affairs of the citizen." *Kilbourn*, 103 U.S. at 190. "[T]here is no congressional power to expose for the sake of exposure." *Watkins*, 354 U.S. at 200. "No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress." *Id.* at 187.

Additionally, because Congress must have a legitimate *legislative* purpose, it cannot use subpoenas to exercise "any of the powers of law enforcement." *Quinn*, 349 U.S. at 161. Those powers "are assigned under our Constitution to the Executive and the Judiciary." *Id.* Put simply, Congress is not "a law enforcement or trial agency," and congressional investigations conducted "for the personal aggrandizement of the investigators" or "to 'punish' those investigated" are "indefensible." *Watkins*, 354 U.S. at 187. Our tripartite system of separated powers requires that "any one of the[] branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn*, 103 U.S. at 190-91.

Finally, when a subpoena is issued by a single committee, any legislative purpose is not legitimate unless it falls within that committee's jurisdiction. "The theory of a committee inquiry is that the committee members are serving as the representatives of the parent assembly in collecting information for a legislative purpose." *Watkins*, 354 U.S. at 200. Congress therefore must "spell out that group's jurisdiction and purpose with sufficient particularity … in the authorizing resolution," which "is the committee's charter." *Id.* at 201. The committee "must conform strictly to the resolution." *Exxon Corp. v. FTC*, 589 F.2d 582, 592 (D.C. Cir. 1978). And when an investigation is "novel" or "expansive," courts will construe the committee's jurisdiction "narrowly." *Tobin v. United States*, 306 F.2d 270, 275 (D.C. Cir. 1962).

Plaintiffs will likely prove that the Committees' subpoenas are not supported by a legitimate legislative purpose. The Committees have never identified a single piece of legislation within their respective jurisdictions that they are considering. The stated justification for their subpoenas, instead, is to investigate "potential foreign influence on the U.S. political process" or the use of the financial system for "illicit purposes." But the information they seek long predates the President's election to office, reaches well beyond transactions associated with foreign parties, and encompasses reams of account records for entities, individuals, children, and spouses who have never even been implicated in any probe. The subpoenas are thus a transparent attempt to "expose" Plaintiffs' finances "for the sake of exposure." *Watkins*, 354 U.S. at 200. The financial conduct of private citizens years before they were anywhere near public office, moreover, has nothing to do with government oversight and is a quintessential law-enforcement task reserved to the executive and judicial branches. These wildly overbroad subpoenas are an improper attempt to exercise authority that Congress does not have. This Court will likely quash or narrow them.

### B. The subpoenas violate the Right to Financial Privacy Act.

In addition to the constitutional concerns, the Committees' subpoenas violate Plaintiffs' statutory rights under the RFPA. The RFPA prohibits the federal government from accessing "the financial records of any customer" from a bank unless the government first follows certain procedures. 12 U.S.C. §3402. The Act likewise prohibits banks from disclosing a customer's financial records until the government complies with those procedures, §3403(a), and certifies that it did so, §3403(b). For subpoenas, summons, and other written requests, the RFPA requires the government to (1) have "reason to believe" that the records are "relevant to a legitimate law enforcement inquiry"; (2) give the customer a copy of the subpoena, summons, or request; and (3) wait at least ten days so the customer can file a motion to quash. §§3405, 3408. If the government fails to follow these procedures, the customer can obtain "injunctive relief … to require that [they] are complied with." §3418. And if

a bank turns over the records before the government complies with the RFPA, the bank is liable for statutory damages, actual damages, punitive damages, attorney's fees, and costs. §3417. In short, "the RFPA defines the conditions in which financial institutions may disclose an individual's financial records, defines the conditions in which government officials may access an individual's financial records, and provides a civil cause of action for anyone injured by a violation of the act's substantive provisions." *Lopez v. First Union Nat. Bank of Fla.*, 129 F.3d 1186, 1190 (11th Cir. 1997) (citations omitted).

Here, the Banks are threatening to turn over, and the Committees are threatening to obtain, Plaintiffs' records without complying with the RFPA. The Committees have not followed the RFPA's procedures—or even tried to do so. They refuse to even give Plaintiffs *copies* of the subpoenas, much less follow the procedures outlined in the statute. And the Committees of course have not certified to the Banks that they followed the RFPA's procedures. Plaintiffs are thus entitled to an injunction prohibiting the Banks from disclosing, and the Committees from obtaining, their financial records.

Congress is not exempt from the procedures outlined in the RFPA. As Defendant Deutsche Bank wrote to Chairwoman Waters in June 2017:

> The Right to Financial Privacy Act ("RFPA") specifically governs how financial institutions like Deutsche Bank must respond to information requests from the federal government. The legislation was intended to "protect and preserve the confidential relationship between [financial] institutions and their customers and the constitutional rights of those customers…." Right to Financial Privacy Act, H.R. 9142, 95th Cong., Sec. 2(b) (1977). You suggest that the law does not apply to Members of Congress because "[t]he legislative branch has never been considered an 'agency or department'" and therefore is not a "government authority" within the meaning of the statute. However, Congress itself has given the term "department" a far broader definition than suggested by your letter. See, e.g., 18 U.S.C. § 6 ("The term 'department' means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government."). Here, Congress's desire to protect customer privacy through the passage of the RFPA compels the conclusion that the term "department" should not be given a narrow reading.

6/29/17 Ltr. from Deutsche Bank to Reps. Waters et al., bit.ly/2XOViaH. Plaintiffs couldn't agree more.

Several other features of the RFPA confirm Deutsche Bank's conclusion that the statute applies to Congress. The RFPA broadly prohibits banks from disclosing information to "*any* Government authority" or "*any* agency or department of the United States." 12 U.S.C. §§3403(a), 3401(3) (emphasis added); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("'[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"). Congress is commonly referred to as a "department" of the federal government. *See, e.g.*, *Calif. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Nixon v. Admin'r of Gen. Servs.*, 433 U.S. 425, 443 (1977). And the Congress that enacted the RFPA acknowledged that it covered the judicial and legislative branches—not just the executive branch—which is why it expressly exempted grand-jury subpoenas, §3413(i), and certain congressional subpoenas, §3412(d).

In short, the RFPA covers these Congressional subpoenas, the Committees made no attempt to comply with the statute, and so the Banks have no authority to disclose Plaintiffs' confidential information. Plaintiffs are likely to prevail on their RFPA claim.

**III.   Alternatively, Plaintiffs have raised serious questions and the balance of hardships tips decidedly in their favor.**

At the very least, Plaintiffs' claims raise "'sufficiently serious questions going to the merits to make them a fair ground for litigation'" and the "balance of hardships tip[] decidedly toward … preliminary relief.'" *Citigroup*, 598 F.3d at 35. The *Eastland* case is directly on point. There, a congressional committee subpoenaed the plaintiff's bank for "records pertaining to or involving the [plaintiff's] account or accounts." 488 F.2d at 1254. The plaintiff sued the bank and several congressional defendants for a declaration that the subpoena was unenforceable and for an injunction prohibiting the defendants from enforcing or complying with it. *Id.* at 1254-56. When the district court denied a TRO, the D.C. Circuit reversed and stayed the subpoena's enforcement. *See id.* at 1256. The

"decisive element" favoring a stay, the D.C. Circuit explained, was the fact that "unless a stay is granted this case will be mooted, and there is likelihood, that irreparable harm will be suffered by [plaintiff when the subpoena's due date arrives]." *Id.* The court added that the stay was warranted because the case raised "serious constitutional questions that require more time" and issues that are "of such significance that they require" further "consideration and deliberation." *Id.* When the district court then denied a preliminary injunction on remand, the D.C. Circuit reversed again and entered another stay. *See id.* at 1257. The D.C. Circuit reiterated that the district court needed to fully consider the merits of plaintiff's claims on final judgment to "ensure" that the case "is determined with the best available perspective, both as to the underlying evidence and the appraisal thereof by the District Judge." *Id.* at 1257.

This Court should follow *Eastland*. Here too, Plaintiffs face "irreparable harm" if they do not receive interim relief before the subpoena's due date. *Id.* at 1256. And here too, Plaintiffs raise "serious constitutional questions" that should be resolved once there has been full merits briefing, oral argument, and this Court's "best available perspective" after thoughtful "consideration and deliberation." *Id.* at 1256-57. If anything, the constitutional questions raised in this case—overbroad attempts by Congress to conduct law-enforcement investigations into the personal finances of a sitting President, his family, and his businesses—are far more serious and important than the questions in *Eastland*. Thus, the fact that Plaintiffs will suffer irreparable harm if the subpoenas are not stayed and the Banks turn over Plaintiffs' information should be "decisive." *Id.* at 1257.

Also like *Eastland*, the balance of harms in this case tips decidedly in favor of a preliminary injunction. For the Banks, they will actually *benefit* from an order preserving the status quo. The Banks currently face a difficult choice: ignore the subpoena and risk adverse action by Congress, or comply

with the subpoena and risk liability to Plaintiffs under the RFPA.[2] Only a preliminary injunction resolves this dilemma: It allows an "orderly resolution of [the] disputed question" by permitting the Banks to "merely await a court ruling on [Plaintiffs'] challenge." *AT&T*, 567 F.2d at 129. A preliminary injunction would recognize and enforce the principle that, when a client "challenges the enforceability of a subpoena," the third-party custodian "c[an] refuse to produce the documents, thereby allowing [the client to litigate], *without violating its obligation to comply with enforceable subpoenas*." *United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010) (emphasis added).

As for the Committees, they have no urgent need for the subpoenaed documents. "[T]he events at issue are already several years old and if the [defendants] prevail[] in this litigation, the records will ultimately be produced." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 11 (D.D.C. 2007). Indeed, the vast majority of documents that the Committees seek predate the President's nomination—let alone his election. The Committees' "interest in receiving the records immediately" thus "poses no threat of irreparable harm to them." *Shapiro v. DOJ*, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016) (quoting *John Doe Agency*, 488 U.S. at 1309 (Marshall, J., in chambers)); *see EPIC v. DOJ*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (explaining that a "desire to have [the documents] in an expedited fashion without more is insufficient to constitute irreparable harm"). Interim relief only "postpones the moment of disclosure … by whatever period of time may be required" to finally adjudicate the merits of Plaintiffs' claim. *Providence Journal*, 595 F.2d at 890; *see Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003) (rejecting government's claim of harm in having its action "delayed for a short period of time pending resolution of this case on the merits"); *22nd Avenue Station, Inc. v. City of Minneapolis*, 429 F.Supp.2d 1144, 1152 (D. Minn. 2006) (similar); *Inchcape Shipping Services Holdings Ltd. v. United States*, 2014 WL 12838793, at *3 (Fed. Cl. 2014) (similar). In any event,

---

[2] The Banks also risk liability for violating the privacy protections in the Graham-Leach-Bliley Act, 15 U.S.C. §6801 *et seq*.

whatever interest the Committees might have in immediately obtaining these documents pales in comparison to Plaintiffs' interest in securing judicial review before the status quo is forever altered.

Last, the public interest weighs strongly in favor of preserving the status quo. Congress simply "does not have an interest" in violating the Constitution or the RFPA, *Amarin Pharma, Inc. v. FDA*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015), and the public "clearly" has "an interest in the government maintaining procedures that comply with constitutional requirements," *ACORN v. FEMA*, 463 F. Supp. 2d 26, 36 (D.D.C. 2006) (citing *O'Donnell Const. Co. v. District of Columbia,* 963 F.2d 420, 429 (D.C. Cir. 1992)). The Constitution entrusts this Court to determine whether Congress has "assumed a power which could only be properly exercised by another branch of the government." *Kilbourn*, 103 U.S. at 192. Denying the interim relief that Plaintiffs seek would "abdicate the responsibility placed by the Constitution upon the judiciary to insure that the Congress" has not acted illegitimately in issuing these sweeping subpoenas for the President's confidential financial documents. *Watkins* 354 U.S. at 198-99. Allowing the Committees to evade judicial review is not in the public interest.

## CONCLUSION

For all these reasons, Plaintiffs respectfully ask this Court to enter a preliminary injunction prohibiting Defendants from enforcing or complying with the subpoenas until the Court can issue a final judgment.

Dated: May 3, 2019

Marc L. Mukasey
MUKASEY FRENCHMAN & SKLAROFF LLP
250 Park Avenue, 7th Floor
New York, NY 10177
347-527-3940
marc.mukasey@mukaseylaw.com

*Counsel for The Donald J. Trump Revocable Trust, The Trump Organization, Inc., Trump Organization LLC, The Trump Corporation, DJT Holdings LLC, DJT Holdings Managing Member LLC, Trump Acquisition LLC, and Trump Acquisition, Corp.*

Respectfully submitted,

*s/ Patrick Strawbridge*
Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

William S. Consovoy
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for President Donald J. Trump, Donald J. Trump Jr., Eric Trump, and Ivanka Trump*