# Exhibit A

# SCHEDULE A

Custodian of Records
Deutsche Bank AG

The time period applicable to this subpoena is **January 1, 2010 through the present**, except for Items 1(i) and 6(i), for which there is no time limitation.

Please provide **complete and unredacted** copies of the following documents by **May 6, 2019**:

1. With respect to:

    ▪ [REDACTED]
    ▪ Donald J. Trump
    ▪ Donald Trump, Jr.
    ▪ Eric Trump
    ▪ Ivanka Trump
    ▪ [REDACTED]
    ▪ The Donald J. Trump Revocable Trust
    ▪ Trump Organization Inc.
    ▪ Trump Organization LLC
    ▪ DJT Holdings LLC
    ▪ DJT Holdings Managing Member LLC
    ▪ Trump Acquisition LLC
    ▪ Trump Acquisition Corp.
    ▪ any other name, alias, code name, code number, or entity used in lieu of any of the individuals or entities named above or members of their immediate family

    or any account (including, but not limited to, any money market, securities, or trading account or any loan account or structure) in the name of any of the above-named individuals or entities (or any other name, alias, code name, code number, or entity used in lieu of any of the named individuals or entities) or members of their immediate family, individually or with other parties, as well as any account in which any of the above-named individuals or entities are or were, or have been identified as being, a trustee, settlor or grantor, beneficiary, or beneficial owner, or in which any of the individuals or entities have or have had in any way control over, individually or with others:

    i. any document related to account applications, opening documents, KYC, due diligence, and closing documents, including, but not limited to, any document identifying:
        a. any financial relationship, transactions, or ties between the above-named individuals or entities and any foreign individual, entity, or government;
        b. any interest held by any foreign individual, entity, or government in the above-named accounts;
        c. any trustee, settlor, grantor, administrator, controlling party, protector, beneficiary, beneficial owner, or signatory; and
        d. any relationship manager or account manager;

    ii. any monthly or other periodic account statement, including, but not limited to, any such document showing any incoming or outgoing funds transfers involving the above-named individuals, entities, and accounts and any foreign individual, entity, or government;
    iii. any document related to any domestic or international transfer of funds in the amount of $10,000 or more, including, but not limited to, any wire transfer, check, cash letter, cashier's check, book entry transfer, or other such documents showing the originator, beneficiary, source of funds, and destination of such transfer, including whether any party to such transfer was a foreign individual, entity, or government;
    iv. any summary or analysis of domestic or international account deposits, withdrawals, and transfers, including, but not limited to, sources of deposits and the destination of withdrawals/transfers, including any wire transfer, check, cash letter, cashier's check, or other monetary instrument, including, but not limited to, any summary or analysis of financial relationships, transactions, or ties between the above-named individuals, entities, and accounts and any foreign individual, entity, or government;
    v. any document related to monitoring for, identifying, or evaluating possible suspicious activity, including suspicious activity identified by Deutsche Bank AG's surveillance/monitoring program or referred by any employee or third-party, including, but not limited to, suspicious activity relating to relationships, transactions, or ties between the above-named individuals, entities, and accounts and any foreign individual, entity, or government;
    vi. any document related to any investment, bond offering, line of credit, loan, mortgage, syndication, credit or loan restructuring, or any other credit arrangement or arrangement to raise or provide funding, including, but not limited to, those involving any foreign individual, entity, or government, or any other third party, including, but not limited to:
        a. application and account opening documents, including, but not limited to, any such document showing any financial relationship, transactions, or ties between the above-named individuals or entities and any foreign individual, entity, or government;
        b. KYC and due diligence, including, but not limited to, any such materials showing any financial relationship, transaction, or ties between the above-named individuals or entities and any foreign individual, entity, or government;
        c. personal or third-party guarantees, including, but not limited to, any guarantee provided by a foreign individual, entity, or government;
        d. collateral and appraisals for any underlying assets, including any asset in which a foreign individual, entity, or government has any interest and any asset located in a foreign country or jurisdiction;
        e. any financial information provided by the borrower (or prospective borrower) or otherwise obtained by Deutsche Bank AG, including, but not limited to:
            1. financial statements (including those showing any revenue, interest, or other income generated from, or payments made to, any foreign individuals, entities, or governments);
            2. statements of net worth (including those showing any foreign assets and liabilities);
            3. debt schedules (including those showing any debts owed to any foreign individuals, entities, or governments);

        4. business operating statements (including, but not limited to, those showing any revenue, interest, or other income generated from, or payments made to, any foreign individuals, entities, or governments);
        5. cash flow statements (including, but not limited to, those showing any revenue, interest, or other income generated from, or payments made to, any foreign individuals, entities, or governments);
        6. bank and brokerage account records (including those relating to any such accounts held at foreign banks or other foreign financial institutions);
        7. tax returns and schedules (including, but not limited to, those showing all foreign sources of income, all foreign debt payments, all interests held by the taxpayer in any foreign business entity or bank/brokerage account, and all interests held by any foreign individual, entity, or government in any of the taxpayer's business entities); and
        8. records of any bankruptcies;
    f. offering memoranda, including, but not limited to, any such document that shows any financial relationships, transactions, or ties between the above-named individuals, entities, or accounts and any foreign individual, entity, or government;
    g. communications involving the underwriting or credit risk management units, credit risk committee, reputational risk committee, management and supervisory boards, or similar units or bodies, including any such communication relating to any financial relationships, transactions, or ties between the above-named individuals, entities, or accounts and any foreign individual, entity, or government; and
    h. term sheets, including those showing the involvement of any foreign individual, entity, or government in the transaction;
    i. risk assessments, risk ratings, and risk upgrades or downgrades, including those relating to any financial relationships, transactions, or ties between the above-named individuals, entities, or accounts and any foreign individual, entity, or government;
    j. credit assessment memoranda and credit reports, including, but not limited to, those assessing any financial relationships, transactions, or ties between the above-named individuals, entities, or accounts and any foreign individual, entity, or government;
    k. closing documents and loan documentation, including, but not limited to, any such document showing any role that any foreign individual, entity, or government had in the transaction; and
    l. periodic loan statements, loan monitoring records, and records relating to any refinancing, restructuring, modification, repayment, forgiveness, foreclosure, or default, including any such document showing any role that any foreign individual, entity, or government had in the refinancing, restructuring, modification, repayment, forgiveness, foreclosure, or default;

vii. any document related to any request for information issued or received by Deutsche Bank AG pursuant to Sections 314(a) or 314(b) of the USA PATRIOT Act, Pub. L. 107-56, including, but not limited to, any such document relating to any financial relationships,

    transactions, or ties between the above-named individuals, entities, or accounts and any foreign individual, entity, or government;
viii. any document possessed or generated by, or communications involving, ▉▉▉ Selected Deutsche Bank Employees ▉▉▉ relating to any of the above-named individuals, entities, accounts, or transactions, particularly, but not limited to, any such document or communication relating to any financial relationships, transactions, or ties between the above-named individuals, entities, or accounts and any foreign individual, entity, or government;
ix. any document not otherwise kept in customary record-keeping systems (including, but not limited to, any document in any personal file or desk file), related to any of the above-named individuals, entities, or accounts and/or any issue or document identified in items i through viii above, including, but not limited to, any such document relating to any financial relationships, transactions, or ties between the above-named individuals, entities, or accounts and any foreign individual, entity, or government; and
x. any document provided to, discussed with, or generated by any member of Deutsche Bank AG's Management Board, Supervisory Board, or Reputational Risk Committee related to any of the above-named individuals, entities, or accounts and/or any issue or document identified in items i through ix above, including, but not limited to, any such document relating to any financial relationships, transactions, or ties between the above-named individuals, entities, and accounts and any foreign individual, entity, or government.

2. Any document related to Deutsche Bank AG's ▉▉▉ program, including, but not limited to, any report or analysis related to the decision to identify an individual or entity as a ▉▉▉; any tracking list of ▉▉▉; any document related to any changes in the ▉▉▉ tracking lists; any periodic review of ▉▉▉; any internal correspondence, meeting minutes, or notes relating to ▉▉▉; any memoranda relating to ▉▉▉ prepared for Deutsche Bank AG's internal credit and risk committees or management and supervisory boards; and any such document or communication relating to any financial relationship, transaction, or tie between any ▉▉▉ (or any account held by a ▉▉▉) and any foreign individual, entity, or government.

3. Any document related to any review or analysis performed by Deutsche Bank AG entitled ▉▉▉ or any similar study, review, or analysis, including, but not limited to, any such document relating to any financial relationship, transaction, or tie between the relevant account holders or customers and any foreign individual, entity, or government.

4. With respect to the following events or activities:

▉▉▉



 i. any document related to any review or analysis of those events or activities conducted by or possessed by Deutsche Bank AG or its agents or representatives, including, but not limited to, any document related to any Deutsche Bank AG personnel facilitating or involved in any of those events or activities, the identity of any third-party individual or entity, or the beneficial owner of any third-party entity, involved in any of those events or activities;

 ii. any record of any transaction involved in, or related to, any of those events or activities;

 iii. any document related to any request for information issued or received pursuant to Sections 314(a) or 314(b) of the USA PATRIOT Act, Pub. L. 107-56; and

 iv. any document provided to, discussed with, or generated by any member of Deutsche Bank AG's management board or supervisory board related to any event or activity identified above and/or any issue or document identified in items i through iii above.

5. Any document related to any review, study, analysis, or communication to or from any U.S. federal, state, or local agency regarding any ▓▓▓▓▓▓▓▓ or immediate family member, including, but not limited to, any government official or entity in which such an individual has been identified as a trustee, settlor, or grantor, beneficiary, beneficial owner, or has or had in any way control over, individually or with others.

6. With respect to:



or any account (including, but not limited to, any money market, securities, or trading account or any loan account or structure) in the name of any of the above-named entities, as well as any account in which any of the entities have or have had in any way control over, individually or with others:

 i. any document related to account applications, opening documents, KYC, due diligence, and closing documents, including any document identifying:
  a. any trustee, settlor, grantor, administrator, controlling party, protector, beneficiary, beneficial owner, or signatory; or

5

        b. any relationship manager or account manager;
  ii. any monthly or other periodic account statement;
  iii. any document related to any domestic or international transfer of funds in the amount of $10,000 or more, including, but not limited to, any wire transfer, check, cash letter, cashier's check, book entry transfer, or other document indicating the originator, beneficiary, source of funds, or destination of such transfer;
  iv. any summary or analysis of domestic and international account deposits, withdrawals, and transfers, including, but not limited to, sources of deposits and the destination of withdrawals/transfers, including any wire transfer, check, cash letter, cashier's check, or other monetary instrument;
  v. any document related to monitoring for, identifying, or evaluating possible suspicious activity, including suspicious activity identified by Deutsche Bank AG's surveillance/monitoring program or referred by any employee or third-party, including, but not limited to, possible suspicious activity relating to foreign individuals and entities and international funds transfers;
  vi. any document related to any agreement, business relationship, or business venture (including, but not limited to, joint underwritings, loans, financings or securitizations such as CDOs) between Deutsche Bank AG and any of the above-named entities;
  vii. any document related to any request for information issued or received by Deutsche Bank AG pursuant to Sections 314(a) or 314(b) of the USA PATRIOT Act, Pub. L. 107-56;
  viii. any document not otherwise kept in customary record-keeping systems (including, but not limited to, any document in any personal file or desk file), related to any entity identified above and/or any issue or document identified in items i through vii above; and
  ix. any document provided to, discussed with, or generated by any member of Deutsche Bank's Management Board, Supervisory Board, or Group Reputational Risk Committee related to any entity identified above and/or any issue or document identified in items i through viii above.

7. Any document related to any periodic, special, or other review conducted by or for Deutsche Bank AG of any of the individuals, entities, accounts, or transactions identified in items 1 and 6 above, including, but not limited to, any relationship or account history, exposure reports, particular transactions, management and servicing, or any other review associated with Deutsche Bank AG's policies and procedures for loan/credit risk analysis or accounts related to correspondent banking, private banking, public figures, politically prominent persons, or their family members, including, but not limited to, any such document relating to any financial relationships, transactions, or ties between the above-named individuals, entities, and accounts and any foreign individual, entity, or government.

8. Any document related to any communication sent or received by [Selected Deutsche Bank Employees] concerning any individual, entity, or any issue or document identified in items 1 through 7 above, including, but not limited to, any entity in which such an individual has been identified as a trustee, settlor, or grantor, beneficiary, beneficial owner, or has or had in any way control over, individually or with others, or any government official.

6

## RESPONDING TO COMMITTEE SUBPOENAS

*In responding to the document request, please apply the instructions and definitions set forth below:*

## **INSTRUCTIONS**

1.      In complying with this request, you should produce all responsive documents in unredacted form that are in the possession, custody, or control or otherwise available to Deutsche Bank AG or its agents, employees, or representatives, regardless of whether the documents are possessed directly by you.

2.      Documents responsive to the request should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

3.      In the event that any entity, organization, or individual named in the request has been, or is currently, known by any other name, the request should be read also to include such other names under that alternative identification.

4.      Each document should be produced in a form that may be copied by standard copying machines.

5.      When you produce documents, you should identify the paragraph(s) and/or clause(s) in the Committee's request to which the document responds.

6.      Documents produced pursuant to this request should be produced in the order in which they appear in your files and should not be rearranged. Any documents that are stapled, clipped, or otherwise fastened together should not be separated. Documents produced in response to this request should be produced together with copies of file labels, dividers, or identifying markers with which they were associated when this request was issued. Indicate the office or division and person from whose files each document was produced. Documents produced on paper (those from paper files that you choose to produce as such) shall not contain any permanent fasteners (i.e., staples), but shall be separated based on the divisions between documents as it is maintained in the custodian's files by non-permanent fasteners (e.g., paper clips, binder clips, rubber bands) or a non-white slip sheet.

7.      Each folder and box should be numbered, and a description of the contents of each folder and box, including the paragraph(s) and/or clause(s) of the request to which the documents are responsive, should be provided in an accompanying index.

8.      Responsive documents must be produced regardless of whether any other person or entity possesses non-identical or identical copies of the same document.

9.      The Committee requests electronic documents in addition to paper productions. If any of the requested information is available in machine-readable or electronic form (such as on a computer server, hard drive, CD, DVD, back up tape, or removable computer media such as thumb drives, flash drives, memory cards, and external hard drives), you should immediately

consult with Committee staff to determine the appropriate format in which to produce the information. Documents produced in electronic format should be organized, identified, and indexed electronically in a manner comparable to the organizational structure called for in (6) and (7) above.

10. Documents shall be produced in accordance with the attached Data Delivery Standards. Alternatively, all documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable, shall be produced in text searchable PDF format. Spreadsheets shall also be provided in their native form. Audio and video files shall be produced in their native format, although picture files associated with email or word processing programs shall be produced in PDF format along with the document it is contained in or to which it is attached.

11. Other than native files produced along with TIFF images in accordance with the attached Data Delivery Standards, every page of material produced to the Committee, whether from paper files or as a text searchable PDF, must contain a unique Bates number. All files produced in PDF format shall be named according to the Bates range that the file contains (e.g. YourCo-00001 - YourCo- 00035.pdf).

12. With respect to the requested wire transfer records, please provide such records in Excel (.xls) format that is enabled (not "read only" format), with separate columns that show each wire transfer field, including, but not limited to, the following fields: "Payment Date," "Amount," "Ordering Customer" #1 through #4, "Ordering Bank" #1 through #5, "Debiting ID," "Debiting Address" #1 through #4, "Credit ID," "Credit Address" #1 through #4, Account Party" #1 through #5, "Ultimate Beneficiary" #1 through #5, "Det_Payment" #1 through #4, and "Bank to Bank" #1 through #6.

13. If any document responsive to this request was, but no longer is, in your possession, custody, or control, or has been placed into the possession, custody, or control of any third party and cannot be provided in response to this request, you should identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control, or was placed in the possession, custody, or control of a third party.

14. If any document responsive to this request was, but no longer is, in your possession, custody or control, state:

   a. how the document was disposed of;
   b. the name, current address, and telephone number of the person who currently has possession, custody or control over the document;
   c. the date of disposition;
   d. the name, current address, and telephone number of each person who authorized said disposition or who had or has knowledge of said disposition.

15. If any document responsive to this request cannot be located, describe with particularity the efforts made to locate the document and the specific reason for its disappearance, destruction or unavailability.

8

16. If a date or other descriptive detail set forth in this request referring to a document, communication, meeting, or other event is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

17. The request is continuing in nature and applies to any newly discovered document, regardless of the date of its creation. Any document not produced because it has not been located or discovered by the return date should be produced immediately upon location or discovery subsequent thereto.

18. You should consult with Committee majority staff regarding the method of delivery prior to sending any materials.

19. In the event that a responsive document is withheld on any basis, including a claim of privilege, you should provide a log containing the following information concerning every such document: (i) the reason the document is not being produced; (ii) the type of document; (iii) the general subject matter; (iv) the date, author and addressee; (v) the relationship of the author and addressee to each other; and (vi) any other description necessary to identify the document and to explain the basis for not producing the document. If a claimed privilege applies to only a portion of any document, that portion only should be withheld and the remainder of the document should be produced. As used herein, "claim of privilege" includes, but is not limited to, any claim that a document either may or must be withheld from production pursuant to any statute, rule, or regulation.

   (a) Any objections or claims of privilege are waived if you fail to provide an explanation of why full compliance is not possible and a log identifying with specificity the ground(s) for withholding each withheld document prior to the request compliance date.

   (b) Any assertion by a request recipient of any such non-constitutional legal bases for withholding documents or other materials, for refusing to answer any deposition question, or for refusing to provide hearing testimony, shall be of no legal force and effect and shall not provide a justification for such withholding or refusal, unless and only to the extent that the Committee (or the chair of the Committee, if authorized) has consented to recognize the assertion as valid.

20. If the request cannot be complied with in full, it should be complied with to the extent possible, which should include an explanation of why full compliance is not possible.

21. Upon completion of the document production, you must submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; (2) documents responsive to the request have not been destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee since the date of

9

receiving the Committee's request or in anticipation of receiving the Committee's request; and (3) all documents identified during the search that are responsive have been produced to the Committee, identified in a log provided to the Committee, as described in (18) above, or identified as provided in (12), (13) or (14) above.

22.     When representing a witness or entity before the Committee in response to a document request or request for transcribed interview, counsel for the witness or entity must promptly submit to the Committee a notice of appearance specifying the following: (a) counsel's name, firm or organization, and contact information; and (b) each client represented by the counsel in connection with the proceeding. Submission of a notice of appearance constitutes acknowledgement that counsel is authorized to accept service of process by the Committee on behalf of such client(s), and that counsel is bound by and agrees to comply with all applicable House and Committee rules and regulations.

# DEFINITIONS

1. The term "Deutsche Bank AG" includes, but is not limited to each of its, subsidiaries, affiliates, branches, divisions, partnerships, properties, groups, special purpose entities, joint ventures, predecessors, successors, or any other entity in which they have or had a controlling interest, and any current or former employee, officer, director, shareholder, partner, member, consultant, senior manager, manager, senior associate, staff employee, independent contractor, agent, attorney or other representative of any of those entities.

2. Each entities listed in items 1 and 6 above includes, but is not limited to, each of its parents, subsidiaries, affiliates, branches, divisions, partnerships, properties, groups, special purpose entities, joint ventures, predecessors, successors, or any other entity in which they have or had a controlling interest, and any current or former employee, officer, director, shareholder, partner, member, consultant, senior manager, manager, senior associate, staff employee, independent contractor, agent, attorney or other representative of any of those entities.

3. The term "documents in your possession, custody or control" means (a) documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, or representatives acting on your behalf; (b) documents that you have a legal right to obtain, that you have a right to copy, or to which you have access; and (c) documents that have been placed in the possession, custody, or control of any third party.

4. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: agreements; papers; memoranda; correspondence; reports; studies; reviews; analyses; graphs; diagrams; photographs; charts; tabulations; presentations; marketing materials; working papers; records; records of interviews; desk files; notes; letters; notices; confirmations; telegrams; faxes, telexes, receipts; appraisals; interoffice and intra office communications; electronic mail (e-mail) and attachments; electronic messages; text messages; contracts; cables; recordings, notations or logs of any type of conversation, telephone call, meeting or other communication; bulletins; printed matter; computer printouts; teletype; invoices; transcripts; audio or video recordings; statistical or informational accumulations; data processing cards or worksheets; computer stored and/or generated documents; computer databases; computer disks and formats; machine readable electronic files, data or records maintained on a computer; instant messages; diaries; questionnaires and responses; data sheets; summaries; minutes; bills; accounts; estimates; projections; comparisons; messages; correspondence; electronically stored information and similar or related materials. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

5. The term "immediate family" means any parent, spouse, child, step child, daughter-in-law, or son-in-law.

6. The term "administrator or controlling party" means any individual, organization, or entity that established, managed, administered, represented, served as signatory for, or engaged in any transaction on behalf of, or in any way had control over any of, or any account or assets of, the entities identified in or responsive to any of the items above.

7.      The term "entity" means a corporation, partnership, limited partnership, limited liability company, joint venture, business trust, or any other form or organization by which business or financial transactions are carried out.

8.      The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, computer, discussions, releases, delivery, or otherwise.

9.      The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

10.     The terms "person" or "persons" mean natural persons, firms, partnerships, associations, limited liability corporations and companies, limited liability partnerships, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, other legal, business or government entities, or any other organization or group of persons, and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof.

11.     The terms "referring" "related" "relating" or "concerning," with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

12.     The term "employee" means agent, borrowed employee, casual employee, consultant, de facto employee, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, contract employee, contractor, or any other type of service provider.