# Exhibit B

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* Capital One Financial Corporation

You are hereby commanded to be and appear before the Committee on Financial Services

of the House of Representatives of the United States at the place, date, and time specified below.

[✓] **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: Committee on Financial Services, Rayburn House Office Building, Room 2129
>
> Date: May 6, 2019          Time: 12:00 PM

[ ] **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____          Time: _____

[ ] **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____          Time: _____

*To* _____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, D.C. this ____ day of April 2, 20 19 .

_____
*Chairman or Authorized Member*

Attest:

_____
*Clerk*

# PROOF OF SERVICE

Subpoena for  Capital One Financial Corporation

Address  Capital One Financial Corporation, 1680 Capital One Drive, McLean, VA 22102-3491

before the  Committee on Financial Services

U.S. House of Representatives
116th Congress

---

Served by (print name)  David Abramowitz

Title  General Counsel and Parliamentarian, House Financial Services Committee

Manner of service  Electronic Mail

Date  April    , 2019

Signature of Server  _David S. Abramowitz_ (signature)

Address  Rayburn House Office Building, Room 2129, Washington, D.C. 20515

# SCHEDULE A

Custodian of Records
Capital One

The time period applicable to this subpoena is **July 19, 2016 through the present**, except for Item "i." and "ii.", for which there is no time limitation.

Please provide **complete and unredacted** copies of the following documents by **May 6, 2019**:

1. With respect to:

    The Donald J. Trump Revocable Trust;
    The Trump Organization Inc.;
    Trump Organization LLC;
    The Trump Corporation;
    Trump Old Post Office LLC;
    Trump Old Post Office Member Corp.;
    DJT Holdings LLC;
    DJT Holdings Managing Member LLC;
    OPO Hotel Manager LLC;
    OPO Hotel Manager Member Corp.;
    THC DC Restaurant Hospitality LLC;
    Trump Acquisition LLC;
    Trump Acquisition Corp.;
    Trump International Hotels Management LLC;
    Trump International Hotels Management Member Corp.;
    Any parent, subsidiary, affiliate, joint venture, predecessor, or successor of the foregoing; or
    Any principal, including directors, shareholders, or officers, or any other representatives of the foregoing;

    or any account (including, but not limited to, any securities or trading account) in the name of any of the above-named entities, as well as any account in which such entities are or were a beneficiary, or beneficial owner, or in which such entities have or have had in any way control over, individually or with others:

    i. any document related to account opening, due diligence, or closing;
    ii. any document that identifies, addresses or is related to the identification of any trustee, guarantor, settlor or grantor, administrator or controlling party, protector, beneficiary, beneficial owner or signatory;
    iii. any document that identifies any relationship manager or account manager;
    iv. any monthly or periodic statement showing line item detail for all account activity, including, but not limited to, intrabank transfers between any of the accounts, and images of all cancelled checks in excess of $5,000;

v. any summary record or analysis of account deposits and transfers, including, but not limited to, the sources of the deposits into those accounts and the destination of the transfers from those accounts, including any wire transfer (showing all wire field information and originator-to-beneficiary and bank-to-bank information), check, cash letter or other monetary instrument involving those accounts;

vi. any document related to any transfer of funds in excess of $10,000, including, but not limited to, any wire transfer, check, cash letter, or any document indicating the originator, beneficiary, intermediary, source of funds or destination of such transfer;

vii. any document related to any possible suspicious activity identified by Capital One Financial Corporation's surveillance or monitoring system or program or referred by any employee or third-party;

viii. any document relating to any annual, special, or other reviews of the accounts pursuant to Capital One Financial Corporation's policies and procedures related to the Bank Secrecy Act, anti-money-laundering, and compliance with guidance on Politically Exposed Persons and domestic or foreign public figures or their families;

ix. any document, including, but not limited to, any personal file not otherwise kept in customary record-keeping systems, related to any loan or extension of credit requested by or provided to any of the above-named entities;

x. any document related to any real estate transaction; and

xi. any document related to, or provided in response to:
   a. any request, subpoena, inquiry or investigation, by any U.S. federal or state agency;
   b. any notice of administrative, civil, or criminal legal action;
   c. any subpoena, search warrant, seizure warrant, summons, or other legal writ, notice, or order or request for information, property, or material, including, but not limited to, those issued pursuant to the USA PATRIOT Act, Pub. L. 107-56; Sections 314(a) or 314(b) of that Act, or any other tax, anti-money laundering or bank statute; and
   d. any request for information made to or by a third party, including, but not limited to any government agency or financial institution.

## RESPONDING TO COMMITTEE SUBPOENAS

*In responding to the document request, please apply the instructions and definitions set forth below:*

### INSTRUCTIONS

1. In complying with this request, you should produce all responsive documents in unredacted form that are in the possession, custody, or control or otherwise available to Capital One Financial Corporation or its agents, employees, or representatives, regardless of whether the documents are possessed directly by you.

2. Documents responsive to the request should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

3. In the event that any entity, organization, or individual named in the request has been, or is currently, known by any other name, the request should be read also to include such other names under that alternative identification.

4. Each document should be produced in a form that may be copied by standard copying machines.

5. When you produce documents, you should identify the paragraph(s) and/or clause(s) in the Committee's request to which the document responds.

6. Documents produced pursuant to this request should be produced in the order in which they appear in your files and should not be rearranged. Any documents that are stapled, clipped, or otherwise fastened together should not be separated. Documents produced in response to this request should be produced together with copies of file labels, dividers, or identifying markers with which they were associated when this request was issued. Indicate the office or division and person from whose files each document was produced. Documents produced on paper (those from paper files that you choose to produce as such) shall not contain any permanent fasteners (i.e., staples), but shall be separated based on the divisions between documents as it is maintained in the custodian's files by non-permanent fasteners (e.g., paper clips, binder clips, rubber bands) or a non-white slip sheet.

7. Each folder and box should be numbered, and a description of the contents of each folder and box, including the paragraph(s) and/or clause(s) of the request to which the documents are responsive, should be provided in an accompanying index.

8. Responsive documents must be produced regardless of whether any other person or entity possesses non-identical or identical copies of the same document.

9. The Committee requests electronic documents in addition to paper productions. If any of the requested information is available in machine-readable or electronic form (such as on a computer server, hard drive, CD, DVD, back up tape, or removable computer media such as thumb drives, flash drives, memory cards, and external hard drives), you should immediately

3

consult with Committee staff to determine the appropriate format in which to produce the information. Documents produced in electronic format should be organized, identified, and indexed electronically in a manner comparable to the organizational structure called for in (6) and (7) above.

10. Documents produced in electronic format should be produced as delimited text with images and native files in accordance with the attached Data Delivery Standards. Alternatively, all documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable, shall be produced in text searchable PDF format. Spreadsheets shall also be provided in their native form. Audio and video files shall be produced in their native format, although picture files associated with email or word processing programs shall be produced in PDF format along with the document it is contained in or to which it is attached. The requested wire transfer records should be produced in Excel (.xls) format that is enabled (not "read only" format), with separate columns that show each wire transfer field, including, but not limited to, the following fields: "Payment Date," "Amount," "Ordering Customer" #1 through #4, "Ordering Bank" #1 through #5, "Debiting ID," "Debiting Address" #1 through #4, "Credit ID," "Credit Address" #1 through #4, Account Party" #1 through #5, "Ultimate Beneficiary" #1 through #5, "Det_Payment" #1 through #4, and "Bank to Bank" #1 through #6.

11. Other than native files produced along with TIFF images in accordance with the attached Data Delivery Standards, every page of material produced to the Committee, whether from paper files or as a text searchable PDF, must contain a unique Bates number. All files produced in PDF format shall be named according to the Bates range that the file contains (e.g. YourCo-00001 - YourCo- 00035.pdf).

12. If any document responsive to this request was, but no longer is, in your possession, custody, or control, or has been placed into the possession, custody, or control of any third party and cannot be provided in response to this request, you should identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control, or was placed in the possession, custody, or control of a third party.

13. If any document responsive to this request was, but no longer is, in your possession, custody or control, state:

   a. how the document was disposed of;
   b. the name, current address, and telephone number of the person who currently has possession, custody or control over the document;
   c. the date of disposition;
   d. the name, current address, and telephone number of each person who authorized said disposition or who had or has knowledge of said disposition.

14. If any document responsive to this request cannot be located, describe with particularity the efforts made to locate the document and the specific reason for its disappearance, destruction or unavailability.

15. If a date or other descriptive detail set forth in this request referring to a document, communication, meeting, or other event is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

16. The request is continuing in nature and applies to any newly discovered document, regardless of the date of its creation. Any document not produced because it has not been located or discovered by the return date should be produced immediately upon location or discovery subsequent thereto.

17. You should consult with Committee majority staff regarding the method of delivery prior to sending any materials.

18. In the event that a responsive document is withheld on any basis, including a claim of privilege, you should provide a log containing the following information concerning every such document: (i) the reason the document is not being produced; (ii) the type of document; (iii) the general subject matter; (iv) the date, author and addressee; (v) the relationship of the author and addressee to each other; and (vi) any other description necessary to identify the document and to explain the basis for not producing the document. If a claimed privilege applies to only a portion of any document, that portion only should be withheld and the remainder of the document should be produced. As used herein, "claim of privilege" includes, but is not limited to, any claim that a document either may or must be withheld from production pursuant to any statute, rule, or regulation.

   (a) Any objections or claims of privilege are waived if you fail to provide an explanation of why full compliance is not possible and a log identifying with specificity the ground(s) for withholding each withheld document prior to the request compliance date.

   (b) Any assertion by a request recipient of any such non-constitutional legal bases for withholding documents or other materials, for refusing to answer any deposition question, or for refusing to provide hearing testimony, shall be of no legal force and effect and shall not provide a justification for such withholding or refusal, unless and only to the extent that the Committee (or the chair of the Committee, if authorized) has consented to recognize the assertion as valid.

19. If the request cannot be complied with in full, it should be complied with to the extent possible, which should include an explanation of why full compliance is not possible.

20. Upon completion of the document production, you must submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; (2) documents responsive to the request have not been destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee since the date of receiving the Committee's request or in anticipation of receiving the Committee's request;

5

and (3) all documents identified during the search that are responsive have been produced to the Committee, identified in a log provided to the Committee, as described in (18) above, or identified as provided in (12), (13) or (14) above.

21. When representing a witness or entity before the Committee in response to a document request or request for transcribed interview, counsel for the witness or entity must promptly submit to the Committee a notice of appearance specifying the following: (a) counsel's name, firm or organization, and contact information; and (b) each client represented by the counsel in connection with the proceeding. Submission of a notice of appearance constitutes acknowledgement that counsel is authorized to accept service of process by the Committee on behalf of such client(s), and that counsel is bound by and agrees to comply with all applicable House and Committee rules and regulations.

# **DEFINITIONS**

1.      The term "Capital One Financial Corporation" includes, but is not limited to Capital One Financial Corporation and each of its subsidiaries, affiliates, branches, divisions, partnerships, properties, groups, special purpose entities, joint ventures, predecessors, successors, or any other entity in which they have or had a controlling interest, and any current or former employee, officer, director, shareholder, partner, member, consultant, senior manager, manager, senior associate, staff employee, independent contractor, agent, attorney or other representative of any of those entities.

2.      Each entities listed in items 1 and 6 above includes, but is not limited to, each of its parents, subsidiaries, affiliates, branches, divisions, partnerships, properties, groups, special purpose entities, joint ventures, predecessors, successors, or any other entity in which they have or had a controlling interest, and any current or former employee, officer, director, shareholder, partner, member, consultant, senior manager, manager, senior associate, staff employee, independent contractor, agent, attorney or other representative of any of those entities.

3.      The term "documents in your possession, custody or control" means (a) documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, or representatives acting on your behalf; (b) documents that you have a legal right to obtain, that you have a right to copy, or to which you have access; and (c) documents that have been placed in the possession, custody, or control of any third party.

4.      The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: agreements; papers; memoranda; correspondence; reports; studies; reviews; analyses; graphs; diagrams; photographs; charts; tabulations; presentations; marketing materials; working papers; records; records of interviews; desk files; notes; letters; notices; confirmations; telegrams; faxes, telexes, receipts; appraisals; interoffice and intra office communications; electronic mail (e-mail) and attachments; electronic messages; text messages; contracts; cables; recordings, notations or logs of any type of conversation, telephone call, meeting or other communication; bulletins; printed matter; computer printouts; teletype; invoices; transcripts; audio or video recordings; statistical or informational accumulations; data processing cards or worksheets; computer stored and/or generated documents; computer databases; computer disks and formats; machine readable electronic files, data or records maintained on a computer; instant messages; diaries; questionnaires and responses; data sheets; summaries; minutes; bills; accounts; estimates; projections; comparisons; messages; correspondence; electronically stored information and similar or related materials. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

5.      The term "immediate family" means any parent, spouse, child, step child, daughter-in-law, or son-in-law.

6.      The term "administrator or controlling party" means any individual, organization, or entity that established, managed, administered, represented, served as signatory for, or engaged in any transaction on behalf of, or in any way had control over any of, or any account or assets of, the entities identified in or responsive to any of the items above.

7

7.  The term "entity" means a corporation, partnership, limited partnership, limited liability company, joint venture, business trust, or any other form or organization by which business or financial transactions are carried out.

8.  The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face to face, in meetings, by telephone, mail, telex, facsimile, computer, discussions, releases, delivery, or otherwise.

9.  The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

10. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, limited liability corporations and companies, limited liability partnerships, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, other legal, business or government entities, or any other organization or group of persons, and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof.

11. The terms or "relating" "concerning" with respect to any given subject, mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

12. The term "employee" means agent, borrowed employee, casual employee, consultant, de facto employee, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, contract employee, contractor, or any other type of service provider.

*In responding to the subpoena, please apply the instructions and definitions set forth below:*

## Instructions

The documents subpoenaed include all those that are in the custody, control or possession, or within the right of custody, control or possession, of Capital One or its agents, employees, or representatives.

If the subpoena cannot be complied with in full, it shall be complied with to the extent possible, with an explanation of why full compliance is not possible. Any document withheld on the basis of privilege shall be identified on a privilege log submitted with the responses to this subpoena. The log shall state the date of the document, its author, his or her occupation and employer, all recipients, the occupation and employer of each recipient, the subject matter, the privilege claimed and a brief explanation of the basis of the claim of privilege. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the

8

document and explain the circumstances by which it ceased to be in your possession, custody, or control.

Documents shall be produced as delimited text with images and native files in accordance with the attached Data Delivery Standards.

Alternatively, all documents derived from word processing programs, email applications, instant message logs, spreadsheets, and wherever else practicable, shall be produced in text searchable PDF format. Spreadsheets shall also be provided in their native form. Audio and video files shall be produced in their native format, although picture files associated with email or word processing programs shall be produced in PDF format along with the document it is contained in or to which it is attached.

Other than native files produced along with TIFF images in accordance with the attached Data Delivery Standards, every page of material produced to the Committee, whether from paper files or as a text searchable PDF, must contain a unique Bates number. All files produced in PDF format shall be named according to the Bates range that the file contains (e.g. YourCo- 00001 - YourCo- 00035.pdf).

Documents produced on paper (those from paper files that you choose to produce as such) shall not contain any permanent fasteners (i.e., staples), but shall be separated based on the divisions between documents as it is maintained in the custodian's files by non-permanent fasteners (e.g., paper clips, binder clips, rubber bands) or a non-white slip sheet.

# DATA DELIVERY STANDARDS

Record productions shall be prepared according to, and strictly adhere to, the following standards:

1. Records produced shall be organized, identified, and indexed electronically.

2. Only alphanumeric characters and the underscore ("_") character are permitted in file and folder names. Special characters are not permitted.

3. Two sets of records shall be delivered, one set to the Majority Staff and one set to the Minority Staff. To the extent the Minority Staff does not have an electronic record review platform, records shall be produced to the Minority Staff in searchable PDF format and shall be produced consistent with the instructions specified in this schedule to the maximum extent practicable.

4. Production media and produced records shall not be encrypted, contain any password protections, or have any limitations that restrict access and use.

5. Records shall be produced to the Committee on one or more CDs, memory sticks, thumb drives, or USB hard drives. Production media shall be labeled with the following information: Case Number, Production Date, Producing Party, Bates Range.

6. Records produced to the Committee shall include an index describing the contents of the production. To the extent that more than one CD, hard drive, memory stick, thumb drive, box, or folder is produced, each CD, hard drive, memory stick, thumb drive, box, or folder shall contain an index describing its contents.

7. All records shall be Bates-stamped sequentially and produced sequentially.

8. When you produce records, you shall identify the paragraph or number in the Committee's Request to which the records respond and add a metadata tag listing that paragraph or number in accordance with **Appendix A**.

9. 
    a. All submissions must be organized by custodian unless otherwise instructed.

    b. Productions shall include:

        1. A Concordance Data (.DAT) Load File in accordance with metadata fields as defined in **Appendix A**.

        2. A Standard Format Opticon Image Cross-Reference File (.OPT) to link produced images to the records contained in the .DAT file.

1

      3. A file (can be Microsoft Word, Microsoft Excel, or Adobe PDF) defining the fields and character lengths of the load file.

c. The production format shall include images, text, and native electronic files. Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, a Microsoft Excel file must be produced as a Microsoft Excel file rather than an image of a spreadsheet. **NOTE:** An Adobe PDF file representing a printed copy of another file format (such as Word Document or Webpage) is NOT considered a native file unless the record was initially created as a PDF.

    1. Image Guidelines:

        1. Single or multi page TIFF files.

        2. All TIFF images must have a unique file name, i.e., Bates Number

        3. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

    2. Text Guidelines:

        1. All text shall be produced as separate text files, not inline within the .DAT file.

        2. Relative paths shall be used to link the associated text file (FIELD: TEXTPATH) to the record contained in the load file.

        3. Associated text files shall be named as the BEGBATES field of each record.

    3. Native File Guidelines:

        1. Copies of original email and native file records/attachments must be included for all electronic productions.

        2. Native file records must be named per the BEGBATES field.

        3. Relative paths shall be used to link the associated native file (FIELD: NATIVEFILELINK) to the record contained in the load file.

        4. Associated native files shall be named as the BEGBATES field of each record.

d. All record family groups, *i.e.*, email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.

e. Only 1 load file and one Opticon image reference file shall be produced per production volume.

f. All extracted text shall be produced as separate text files.

g. Record numbers in the load file should match record Bates numbers and TIFF file names.

h. All electronic record produced to the Committee should include the fields of metadata listed in **Appendix A**.

# Appendix A

Production Load File Formatting and Delimiters:

- The first line shall be a header row containing field names.
- Load file delimiters shall be in accordance with the following:
    - Field Separator: ¶ (20)          Text Qualifier: þ (254)
    - Newline: \n (10)                  Multi-Value Separator: ; (59)
    - Nested Value Separator: \ (92)
- All Date / Time Data shall be split into two separate fields (see below).
    - Date Format: mm/dd/yyyy—*i.e.*, 05/18/2015
    - Time Format: hh:mm:ss A—*i.e.*, 08:39:12 AM

Required Metadata Fields

| Field Name | Sample Data | Description |
| --- | --- | --- |
| FIRSTBATES | EDC0000001 | First Bates number of native file record/email |
| LASTBATES | EDC0000001 | Last Bates number of native file record/email **The LASTBATES field should be populated for single page records/emails. |
| ATTACHRANGE | EDC0000001–EDC0000015 | Bates number of the first page of the parent record to the Bates number of the last page of the last attachment "child" record |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |

| Field Name | Sample Data | Description |
|---|---|---|
| CUSTODIAN | Smith, John | Email: mailbox where the email resided Attachment: Individual from whom the record originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of record<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of record (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone Native: (empty) |
| NATIVEFILELINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file record<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | MSG | The content type of an Email or native file record as identified/extracted from the header |

5

| Field Name | Sample Data | Description |
|---|---|---|
| FILE_EXTEN | MSG | The file type extension representing the Email or native file record; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the record |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the record was created |
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the record was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the record was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the record was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the record was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the record was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the record was last printed |
| NATIVEFILESIZ E | 5,952 | Size of native file record/email in KB<br>**Use only whole numbers |
| PGCOUNT | 1 | Number of pages in native file record/email |
| PATH | J:\Shared\Smith J\October Agenda.doc | Email: (empty)<br>Native: Path where native file record was stored including original file name |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name<br>Native: (empty) |
| INTMSGID | <000805c2c71b$7 5977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

| Field Name | Sample Data | Description |
| --- | --- | --- |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the record |
| TEXTPATH | \TEXT\AAA0001.txt | Path to the record's text file that contains extracted text to be used for processing. Every record has a relative path to its text file in this field. **Note:** These paths may also be fully qualified; and thus do not have to be relative. |
| NATIVEFILEPAT H | \NATIVES\MESSAGE1.msg; \NATIVES\ATTACHMENT1.doc | Path to the record's native file. Every record has a relative path to its native file in this field. **Note:** These paths may also be fully qualified; and thus do not have to be relative. |
| HANDWRITTEN | YES | Field should be marked "YES" if the record has any handwritten notes or other text that is not contained in the text file |
| REDACTED | YES | Field should be marked "YES" if the record contains any redactions, "NO" otherwise |

Metadata Fields Required Upon Specific Request

| Field Name | Sample Data | Description |
| --- | --- | --- |
| TAGS | FirstPass\Responsive; FirstPass\ForQC | If requested—a list of tags assigned to the record. Multiple tags are separated by the multi-value separator, for example: "A; B; C", and nested tags are denoted using the nested value separator, for example: "X\Y\Z". Tags for attachments will appear under the custom field "ATTACHMENT_TAGS". |
| FOLDERS | JohnDoeDocs\FirstPass | If requested—a list of folders of which the record is a part. Multiple folders are separated by the multi-value separator, for example: "A; B; C", and nested folders are denoted using the nested value separator, for example: "X\Y\Z". Folders for attachments will appear under the custom field "ATTACHMENT_FOLDERS". |

7